## MEGHRIG ET AL. *v.* KFC WESTERN, INC.

No. 95–83.   Argued January 10, 1996—Decided March 19, 1996

O'CONNOR, J., delivered the opinion for a unanimous Court.

*John P. Zaimes* argued the cause and filed briefs for petitioners.

*Jeffrey P. Minear* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Days, Assistant Attorney General Schiffer, Deputy Solicitor General Wallace, Anne S. Almy,* and *John T. Stahr.*

*Daniel Romano* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the Petroleum Marketers Association of America by *Alphonse M. Alfano* and *Robert S. Bassman;* for the Southern California Service Station Association by *Dimitri G. Daskalopoulos;* and for the Western States Petroleum Association by *Donna R. Black.*

Briefs of *amici curiae* urging affirmance were filed for the Commonwealth of Massachusetts et al. by *Scott Harshbarger,* Attorney General of

JUSTICE O'CONNOR delivered the opinion of the Court.

We consider whether § 7002 of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U. S. C. § 6972, authorizes a private cause of action to recover the prior cost of cleaning up toxic waste that does not, at the time of suit, continue to pose an endangerment to health or the environment. We conclude that it does not.

I

Respondent KFC Western, Inc. (KFC), owns and operates a "Kentucky Fried Chicken" restaurant on a parcel of property in Los Angeles. In 1988, KFC discovered during the course of a construction project that the property was contaminated with petroleum. The County of Los Angeles Department of Health Services ordered KFC to attend to the problem, and KFC spent $211,000 removing and disposing of the oil-tainted soil.

Three years later, KFC brought this suit under the citizen suit provision of RCRA, 90 Stat. 2825, as amended, 42

Massachusetts, and *William L. Pardee, John Beling,* and *Karen McGuire,* Assistant Attorneys General, *Jeremiah W. Nixon,* Attorney General of Missouri, and *James Layton, Joseph P. Bindbeutel,* and *Douglas E. Nelson,* Assistant Attorneys General, and by the Attorneys General of their respective jurisdictions as follows: *Bruce M. Botelho* of Alaska, *Calvin E. Holloway* of Guam, *Chris Gorman* of Kentucky, *Frankie Sue Del Papa* of Nevada, *Tom Udall* of New Mexico, *Darrell V. McGraw, Jr.,* of West Virginia, *Robert A. Butterworth* of Florida, *Carla Stolla* of Kansas, *Richard P. Ieyoub* of Louisiana, *Deborah T. Poritz* of New Jersey, *Dennis C. Vacco* of New York, and *James E. Doyle* of Wisconsin; for the State of Louisiana through its Department of Transportation and Development by *William M. Hudson III, Edgar D. Gankendorff, Lawrence A. Durant, James M. Bookter,* and *Charley Hutchens;* for the Bi-State Development Agency of the Missouri-Illinois Metropolitan District by *Timothy W. Burns, Jerome M. Organ, John Fox Arnold,* and *Nelson G. Wolff;* and for Kaufman and Broad Home Corp. et al. by *William N. Kammer* and *Robert C. Longstreth.*

U. S. C. § 6972(a),* seeking to recover these cleanup costs from petitioners Alan and Margaret Meghrig.

KFC claimed that the contaminated soil was a "solid waste" covered by RCRA, see 42 U. S. C. § 6903(27), that it had previously posed an "imminent and substantial endangerment to health or the environment," see § 6972(a)(1)(B), and that the Meghrigs were responsible for "equitable restitution" of KFC's cleanup costs under § 6972(a) because, as prior owners of the property, they had contributed to the waste's "past or present handling, storage, treatment, transportation, or disposal." See App. 12–19 (first amended complaint).

The District Court held that § 6972(a) does not permit recovery of past cleanup costs and that § 6972(a)(1)(B) does not authorize a cause of action for the remediation of toxic waste that does not pose an "imminent and substantial endangerment to health or the environment" at the time suit is filed, and dismissed KFC's complaint. App. to Pet. for Cert. A21–A23. The Court of Appeals for the Ninth Circuit reversed, over a dissent, 49 F. 3d 518, 524–528 (1995) (Brunetti, J.), finding that a district court had authority under § 6972(a) to award restitution of past cleanup costs, *id.,* at 521–523, and

---

*Section 6972(a) provides, in relevant part:

"Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

.     .     .     .

"(1)(B) against any person, including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

.     .     .     .

". . . The district court shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both . . . ."

that a private party can proceed with a suit under § 6972(a)(1)(B) upon an allegation that the waste at issue presented an "imminent and substantial endangerment" at the time it was cleaned up, *id.*, at 520–521.

The Ninth Circuit's conclusion regarding the remedies available under RCRA conflicts with the decision of the Court of Appeals for the Eighth Circuit in *Furrer* v. *Brown*, 62 F. 3d 1092, 1100–1101 (1995), and its interpretation of the "imminent endangerment" requirement represents a novel application of federal statutory law. We granted certiorari to address the conflict between the Circuits and to consider the correctness of the Ninth Circuit's interpretation of RCRA, 515 U. S. 1192 (1995), and now reverse.

## II

RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. See *Chicago* v. *Environmental Defense Fund*, 511 U. S. 328, 331–332 (1994). Unlike the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 94 Stat. 2767, as amended, 42 U. S. C. § 9601 *et seq.*, RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards. Cf. *General Electric Co.* v. *Litton Industrial Automation Systems, Inc.*, 920 F. 2d 1415, 1422 (CA8 1990) (the "two . . . main purposes of CERCLA" are "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party"). RCRA's primary purpose, rather, is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, "so as to minimize the present and future threat to human health and the environment." 42 U. S. C. § 6902(b).

Chief responsibility for the implementation and enforcement of RCRA rests with the Administrator of the Environ-

mental Protection Agency (EPA), see §§ 6928, 6973, but like other environmental laws, RCRA contains a citizen suit provision, § 6972, which permits private citizens to enforce its provisions in some circumstances.

Two requirements of § 6972(a) defeat KFC's suit against the Meghrigs. The first concerns the necessary timing of a citizen suit brought under § 6972(a)(1)(B): That section permits a private party to bring suit against certain responsible persons, including former owners, "who ha[ve] contributed or who [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which *may present* an *imminent* and substantial endangerment to health or the environment." (Emphasis added.) The second defines the remedies a district court can award in a suit brought under § 6972(a)(1)(B): Section 6972(a) authorizes district courts "*to restrain* any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste . . . , *to order such person to take such other action as may be necessary*, or both." (Emphasis added.)

It is apparent from the two remedies described in § 6972(a) that RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts. Under a plain reading of this remedial scheme, a private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, *i. e.*, one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, *i. e.*, one that "restrains" a responsible party from further violating RCRA. Neither remedy, however, is susceptible of the interpretation adopted by the Ninth Circuit, as neither contemplates the award of past cleanup costs, whether these are denominated "damages" or "equitable restitution."

In this regard, a comparison between the relief available under RCRA's citizen suit provision and that which Congress

has provided in the analogous, but not parallel, provisions of CERCLA is telling. CERCLA was passed several years after RCRA went into effect, and it is designed to address many of the same toxic waste problems that inspired the passage of RCRA. Compare 42 U. S. C. § 6903(5) (RCRA definition of "hazardous waste") and § 6903(27) (RCRA definition of "solid waste") with § 9601(14) (CERCLA provision incorporating certain "hazardous substance[s]," but specifically excluding petroleum). CERCLA differs markedly from RCRA, however, in the remedies it provides. CERCLA's citizen suit provision mimics § 6972(a) in providing district courts with the authority "to order such action as may be necessary to correct the violation" of any CERCLA standard or regulation. 42 U. S. C. § 9659(c). But CERCLA expressly permits the Government to recover "all costs of removal or remedial action," § 9607(a)(4)(A), and it expressly permits the recovery of any "necessary costs of response, incurred by any . . . person consistent with the national contingency plan," § 9607(a)(4)(B). CERCLA also provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable" for these response costs. See § 9613(f)(1). Congress thus demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy.

That RCRA's citizen suit provision was not intended to provide a remedy for past cleanup costs is further apparent from the harm at which it is directed. Section 6972(a)(1)(B) permits a private party to bring suit only upon a showing that the solid or hazardous waste at issue "may present an imminent and substantial endangerment to health or the environment." The meaning of this timing restriction is plain: An endangerment can only be "imminent" if it "threaten[s] to occur immediately," Webster's New International Dictionary of English Language 1245 (2d ed. 1934), and the refer-

ence to waste which "may present" imminent harm quite clearly excludes waste that no longer presents such a danger. As the Ninth Circuit itself intimated in *Price* v. *United States Navy*, 39 F. 3d 1011, 1019 (1994), this language "implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later." It follows that § 6972(a) was designed to provide a remedy that ameliorates present or obviates the risk of future "imminent" harms, not a remedy that compensates for past cleanup efforts. Cf. § 6902(b) (national policy behind RCRA is "to minimize the present and future threat to human health and the environment").

Other aspects of RCRA's enforcement scheme strongly support this conclusion. Unlike CERCLA, RCRA contains no statute of limitations, compare § 9613(g)(2) (limitations period in suits under CERCLA § 9607), and it does not require a showing that the response costs being sought are reasonable, compare §§ 9607(a)(4)(A) and (B) (costs recovered under CERCLA must be "consistent with the national contingency plan"). If Congress had intended § 6972(a) to function as a cost-recovery mechanism, the absence of these provisions would be striking. Moreover, with one limited exception, see *Hallstrom* v. *Tillamook County*, 493 U. S. 20, 26–27 (1989) (noting exception to notice requirement "when there is a danger that hazardous waste will be discharged"), a private party may not bring suit under § 6972(a)(1)(B) without first giving 90 days' notice to the Administrator of the EPA, to "the State in which the alleged endangerment may occur," and to potential defendants, see §§ 6972(b)(2)(A)(i)–(iii). And no citizen suit can proceed if either the EPA or the State has commenced, and is diligently prosecuting, a separate enforcement action, see §§ 6972(b)(2)(B) and (C). Therefore, if RCRA were designed to compensate private parties for their past cleanup efforts, it would be a wholly irrational mechanism for doing so. Those parties with insubstantial problems, problems that neither the State nor

the Federal Government feel compelled to address, could recover their response costs, whereas those parties whose waste problems were sufficiently severe as to attract the attention of Government officials would be left without a recovery.

Though it agrees that KFC's complaint is defective for failing properly to allege an "imminent and substantial endangerment," the Government (as *amicus*) nonetheless joins KFC in arguing that § 6972(a) does not in all circumstances preclude an award of past cleanup costs. See Brief for United States as *Amicus Curiae* 22–28. The Government posits a situation in which suit is properly brought while the waste at issue continues to pose an imminent endangerment, and suggests that the plaintiff in such a case could seek equitable restitution of money previously spent on cleanup efforts. Echoing a similar argument made by KFC, see Brief for Respondent 11–19, the Government does not rely on the remedies expressly provided in § 6972(a), but rather cites a line of cases holding that district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress. See, *e. g., Porter* v. *Warner Holding Co.,* 328 U. S. 395 (1946); *Wyandotte Transp. Co.* v. *United States,* 389 U. S. 191 (1967); *Hecht Co.* v. *Bowles,* 321 U. S. 321 (1944).

RCRA does not prevent a private party from recovering its cleanup costs under other federal or state laws, see § 6972(f) (preserving remedies under statutory and common law), but the limited remedies described in § 6972(a), along with the stark differences between the language of that section and the cost recovery provisions of CERCLA, amply demonstrate that Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed to recover its costs under RCRA. As we explained in *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.,* 453 U. S. 1, 14 (1981), where Congress has provided "elaborate enforcement provisions" for remedying the viola-

tion of a federal statute, as Congress has done with RCRA and CERCLA, "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under" the statute. " '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' " *Id.*, at 14–15 (quoting *Transamerica Mortgage Advisors, Inc.* v. *Lewis*, 444 U. S. 11, 19 (1979)).

Without considering whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced, cf. *United States* v. *Price*, 688 F. 2d 204, 211–213 (CA3 1982) (requiring funding of a diagnostic study is an appropriate form of relief in a suit brought by the Administrator under § 6973), or otherwise recover cleanup costs paid out after the invocation of RCRA's statutory process, we agree with the Meghrigs that a private party cannot recover the cost of a *past* cleanup effort under RCRA, and that KFC's complaint is defective for the reasons stated by the District Court. Section 6972(a) does not contemplate the award of past cleanup costs, and § 6972(a)(1)(B) permits a private party to bring suit only upon an allegation that the contaminated site presently poses an "imminent and substantial endangerment to health or the environment," and not upon an allegation that it posed such an endangerment at some time in the past. The judgment of the Ninth Circuit is reversed.

*It is so ordered.*