**MARATHON OIL COMPANY and Marathon Ashland Petroleum, L.L.C., Plaintiffs,**

v.

**TEXAS CITY TERMINAL RAILWAY COMPANY d/b/a "The Port of Texas City"; BP Amoco Corporation; Missouri Pacific Railroad Company; Burlington Northern Santa Fe Corporation; United States Department of Commerce; and United States Department of Defense, Defendants.**

**No. Civ.A. G–01–336.**

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 24, 2001.

John Roy Brown, Houston, TX, for plaintiffs.

William J. Jackson, May Day, Houston, TX, for Texas City Terminal Railway Co., defendant.

Richard Austin Schwartz, Schwartz Junell, Houston, TX, for BP Amoco Corp., defendant.

David Elias Cowen, Douglas W. Poole, McLeod Alexander, Galveston, TX, for Burlington Northeern Santa Fe Corp., defendant.

A. Kay Roska, Thompson & Knight, Dallas, TX, for Universal Oil Products Co., defendant.

Angeline A. Purdy, U.S. Dept. of Justice Environmental Defense Section, Washington, DC, for U.S. Dept. of Commerce, U.S. Dept. of Defense, defendants.

## ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS MOTION TO DISMISS FOR FAIL-URE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANT-ED

KENT, District Judge.

Plaintiffs Marathon Ashland Petroleum L.L.C. ("Marathon Ashland") and Marathon Oil Company ("Marathon Oil") bring this suit pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), 42 U.S.C. § 9613(f)(1), the Citizens' Suit Provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. These claims arise from the environmental contamination of a 1.28 acre tract of land located in Texas City, Texas (the "DPC Site"). Now before the Court is Defendant Burlington Northern Santa Fe Corporation's ("BNSFC") Motion to Dismiss under Fed. R.Civ.P. 12(b)(6). For the reasons stated below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. *Background*

Defendant Texas City Terminal Railway Company owns the DPC Site, a 1.28 acre tract of land in the Texas City Industrial Area. The DPC Site has a long history of industrial use, including several decades in which the area was used for the disposal and reclamation of product waste. Considering the lengthy time period that hazardous substances were allegedly leaked, spilled, funneled towards and dumped there, the current contaminated state of the 1.28 acres is not surprising. Now, despite the fact that disposal and recovery operations at the DPC Site ceased during the 1970's, the uncontrollable migration of wastes within the DPC Site allegedly constitutes an existing and continuous threat to the Texas City environment.

Over the past eighty years, a long line of lessees have controlled, managed, and operated the DPC Site. The Plaintiffs themselves are the two most recent lessees of the property. Plaintiff Marathon Ashland, current lessee of the DPC Site, acquired its lease from Marathon Oil in 1998. Plaintiff Marathon Oil, lessee from 1962 until 1997, was assigned the lease pursuant to its purchase of a portion of Plymouth Oil Company in 1962.

The pleadings filed by Marathon Ashland and Marathon Oil allege that numerous actions by multiple entities have resulted in the contamination at the DPC Site. Strictly with respect to BNSFC, the Plaintiffs assert that BNSFC (and other railway companies who have since merged with BNSFC) owned tank cars from which hazardous products were leaked, spilled or dumped near the site during the 1940's and 1950's. At that time, a tank car rack ("Tank Car Rack"), upon which railroad

tank cars were loaded and unloaded with chemicals, crude oil, and petroleum products, stood immediately north of the DPC Site. The Plaintiffs allege that chemicals, crude oil and petroleum products, along with effluents produced during tank car cleaning, were released at the Tank Car Rack and drained through channels and ditches that ultimately led to the DPC Site.

Faced with the costly cleanup of the DPC Site, the Plaintiffs filed this lawsuit against BNSFC and others pursuant to the cost recovery and contribution provisions of CERCLA, the RCRA Citizens' Suit provision, and the Federal Declaratory Judgment Act. In response, BNSFC has filed this Motion to Dismiss all of Plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6).

## II. *Analysis*

The Federal Rules of Civil Procedure authorize a federal court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the Complaint, and views them in a light most favorable to the Plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the Plaintiff can prove no set of facts in support of the claims that would justify relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994).

### A. *BNSFC's Claim that it is not a Proper Party to this Litigation*

In *United States v. Bestfoods,* 524 U.S. 51, 63–64, 118 S.Ct. 1876, 1885–86,

141 L.Ed.2d 43 (1998), the Supreme Court held that a parent corporation may be charged with derivative CERCLA liability for its subsidiary's actions when (and only when) the corporate veil may be pierced. In addition, the Court held that a corporate parent is not directly liable under CERCLA unless it actively participated in, and exercised control over, the operations of its subsidiary. *See id.* at 64–67, 118 S.Ct. at 1886–87.

Relying upon the *Bestfoods* decision for support, BNSFC argues that it is not a proper party to this litigation because it is a holding company and parent corporation, not a common carrier or railroad. BNSFC acknowledges that it is the parent corporation of the Burlington Northern Santa Fe Railroad Company, but asserts that Plaintiffs have not alleged any facts to support a piercing or direct liability theory based upon its subsidiary's actions. As such, BNSFC argues that the holding of *Bestfoods* requires its dismissal from this action.

Plaintiffs, in response, point out that the corporate structure of BNSFC and its relationship to affiliated companies during the 1940's, 1950's, and 1960's may have differed from its corporate structure today. Although the Burlington Northern Santa Fe Railroad Company is currently a subsidiary of BNSFC, the relationship between these entities may have differed in the past. The Plaintiffs admit that they are unaware of a direct link between BNSFC and waste disposal practices at the DPC Site at this time, but request only that this Court allow them the opportunity to develop such evidence through regular discovery practice.

While this Court does not question BNSFC's depiction of its current corporate structure, the Court is cognizant that

newspaper articles in recent years have reported multiple large-scale mergers and abundant corporate restructuring within the railroad industry.[1] As such, this Court accepts the legitimate possibility of Plaintiffs' theory that the current relationship of BNSFC and its affiliated companies may differ from the relationship between BNSFC and its affiliates in the 1940's, 1950's, and 1960's. In light of the sweeping changes in the railroad industry over the past several decades, Plaintiffs simply must be afforded an opportunity to conduct discovery with respect to BNSFC's past corporate structure prior to any determination by this Court of whether or not BNSFC is now a proper party to this litigation. As such, BNSFC's Motion to Dismiss BNSFC as a party to this litigation is **DENIED**.

However, this Court's decision that BNSFC shall remain a party to this litigation (at least for now) does not indicate any predisposition whatsoever to adopt a piercing theory in order to impose CERCLA liability upon BNSFC. Such a decision is manifestly premature and clearly inappropriate without additional discovery by the parties. Moreover, if the Plaintiffs fail to develop evidence supporting the viability of a direct liability or piercing theory after a reasonable time for discovery has elapsed, BNSFC may certainly request dismissal from this lawsuit on a Motion for Partial Summary Judgment.

**B.** *Marathon Ashland's Section 107 Cost Recovery Claims*

 In addition to its action against BNSFC under 42 U.S.C. § 9613(f) (CERCLA § 113(f)(1)) to recover contribution for environmental response costs, Marathon Ashland also seeks to maintain a direct, private party cost recovery action against BNSFC under 42 U.S.C. § 9607(a) (CERCLA § 107(a)). Although Marathon Ashland denies any liability for contamination of the DPC Site, as the current lessee of the contaminated property, Marathon Ashland undeniably qualifies as a potentially responsible party ("PRP") under CERCLA.[2] As articulated by this Court in *Clear Lake Properties v. Rockwell Intern. Corp.*, 959 F.Supp. 763, 766 (S.D.Tex. 1997) (Kent, J.), one PRP cannot bring a direct cost recovery action against a second PRP. Marathon Ashland's cost recovery claims against BNSFC, an alleged PRP, are essentially contribution actions, and as such, fall solely within the purview of § 113. *See id.* Accordingly, BNSFC's Motion to Dismiss is **GRANTED** with respect to Marathon Ashland's § 107 cost recovery claims.

**C.** *Marathon Ashland and Marathon Oil's Transporter Liability Claims*[3]

 BNSFC relies upon *Geraghty and Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917,

---

**1.** *See, e.g., Railroad Merger Approved,* Washington Post, September 8, 2001, at E02; Anthony DePalma, *All Aboard for a Big Rail Deal?*, N.Y. Times, February 22, 2000; Charles V. Bagli, *A $6 Billion Merger Would Create a Transcontinental Railroad*, N.Y. Times, December 21, 1999.

**2.** Subject to certain statutory exceptions, PRPs are broadly defined to include: (1) current operators and owners of vessels or facilities that accepted hazardous substances; (2) past owners or operators of facilities where hazardous substances were disposed; (3) persons who by contract or agreement arranged for the disposal or transport of hazardous substances; and (4) persons who accept or accepted hazardous substances for transport to disposal or treatment facilities. *See* 42 U.S.C. § 9607(a).

**3.** The Fifth Circuit recently held that a PRP cannot file a contribution claim against another PRP under CERCLA unless it has a pending or adjudged administrative abatement order or cost recovery action against it. *See Aviall Services, Inc. v. Cooper Industries, Inc.*, 263 F.3d 134 (5th Cir.2001). The plead-

929 (5th Cir.2000) as support for its Motion to Dismiss Plaintiffs' transporter liability claims.[4] In *Geraghty*, the Fifth Circuit stated that transporter liability "is imposed on a person who transports hazardous substances to a disposal or treatment facility or to sites selected by such person." *Id.* at 929. The *Geraghty* Court further clarified that the unintended migration of hazardous substances is not sufficient to establish a transporter claim. *See id.* BNSFC asserts that Plaintiffs' allegations do not establish a claim for transporter liability under *Geraghty* because Plaintiffs fail to assert that BNSFC physically transported anything to, or that BNSFC selected, the DPC Site for waste disposal. Furthermore, BNSFC asserts that any migration of chemicals, crude oil, petroleum products and effluent from the Tank Car Rack to the DPC Site was unintended and therefore insufficient to establish transporter liability under *Geraghty*.

In response, Marathon Ashland and Marathon Oil allege that: (1) railroad tank cars were loaded and unloaded with Products at the Tank Car Rack; (2) some tank cars were owned by BNSFC and other railway companies who have since merged with or been acquired by BNSFC; (3) chemicals, crude oil, and petroleum products that were leaked, spilled, or dumped from the tank cars contaminated the DPC Site; and (4) effluent produced when tank cars were cleaned with a steam siphon contaminated the DPC Site. Plaintiffs also

allege that the Tank Car Rack itself was intended to be used as a disposal site and that persons familiar with the Tank Car Rack anticipated that hazardous substances and effluent from the Tank Car Rack would be recovered and disposed of at the DPC Site.

The arguments presented by both parties indicate that the pleadings present legitimately conflicting versions of the facts concerning past practices at the Tank Car Rack. Whether or not BNSFC falls within the definition of "transporter" provided by CERCLA and elaborated upon by *Geraghty* is obviously a matter of factual dispute. For example, the parties dispute whether the Tank Car Rack was intended as a disposal site and both sides assert opposing views as to whether the recovery and disposal of Tank Car Rack products and effluents on the DPC Site was foreseeable.

However, as previously discussed, on a Motion to Dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint, and view them in the light most favorable to the Plaintiff. Therefore, this Court will now presume that: (1) BNSFC owned tank cars used for the transportation of hazardous substances to a disposal site (the Tank Car Rack); (2) some hazardous substances within the tank cars were subsequently released; (3) the released substances, together with effluents, reached the DPC

---

ings on file with the Court in this case do not indicate whether Marathon Ashland or Marathon Oil have been subjected to such an order or proceeding. As noted by the Plaintiffs in Plaintiffs' Motion for Leave to File Amended Pleading, filed September 13, 2001, a Petition for Rehearing *en banc* is pending in *Aviall*. If the Petition for Rehearing *en banc* is denied, the Court expects that Plaintiffs will promptly respond to the *Aviall* decision and indicate whether Plaintiffs comply with the requirements set forth therein.

**4.** Under CERCLA, a "transporter" includes "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4).

Site; and (4) the recovery and disposal of these substances and effluents at the DPC Site was foreseeable. As such, BNSFC's Motion to Dismiss Plaintiffs' transporter liability claims is **DENIED.** Nevertheless, if BNSFC feels that Plaintiffs' transporter liability claims are still without merit after a reasonable time for discovery has elapsed, the Court again invites BNSFC to request dispositive treatment of Plaintiffs' claims on a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 54.

### D. *Marathon Ashland and Marathon Oil's RCRA Claims*

In addition to Plaintiffs' CERCLA claims, the Plaintiffs have also requested injunctive relief pursuant to the RCRA's Citizens' Suit Provision, 42 U.S.C. § 6972(a)(1)(B). In order to prevail on a § 6972(a)(1)(B) claim, a plaintiff must establish three elements: (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to the handling, storage, treatment, transportation, or storage of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment. *See Cox v. City of Dallas, Texas*, 256 F.3d 281, 292 (5th Cir.2001). In order to be deemed a "contributor," the Defendant must have had "a part or share in producing an effect" at the site in question. *See id.* at 295.

BNSFC proposes two theories for dismissal of Plaintiffs' RCRA claims under Rule 12(b)(6). First, BNSFC argues that the Plaintiffs' allegations do not establish that BNSFC "contributed to" the disposal of solid or hazardous waste at the DPC Site. Rather, BNSFC alleges that Plaintiffs pleadings establish that any hazardous wastes or substances subject to the RCRA were not in possession or control of BNSFC, not being transported by BNSFC when released, and that BNSFC played no role in the alleged disposal of hazardous substances at the DPC Site. Secondly, BNSFC argues that there is no imminent and substantial threat of endangerment at the DPC Site and therefore, Plaintiffs RCRA claims are precluded by the Supreme Court's decision in *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996).[5]

In response, Plaintiffs allege that BNSFC, as a transporter of hazardous substances, did indeed play a role in the environmental contamination at the DPC Site, namely because of BNSFC's alleged control over practices at the Tank Car Rack. Plaintiffs allege that channels and ditches constructed at the Tank Car Rack served as conduits to move solid and hazardous wastes away from the tank cars to the DPC Site. Because of BNSFC's alleged familiarity with activities at the Tank Car Rack, BNSFC allegedly should have anticipated that contaminants from the Tank Car Rack would reach the DPC Site. Furthermore, Plaintiffs assert that an imminent and substantial endangerment to the environment does exist at the DPC Site due to uncontrollable migration or threatened migration of contaminants into the groundwater.

5. In *Meghrig*, the Supreme Court held that the Citizens' Suit provision of the RCRA provides a cause of action to a plaintiff only upon a showing that the waste at issue "may present imminent and substantial endangerment to health or environment" and precludes a private cause of action to recover response costs for the cleanup of waste that does not present danger at the time of suit. *See Meghrig*, 516 U.S. at 484, 116 S.Ct. at 1254.

Clearly, the parties are in vigorous good-faith disagreement as to the facts and circumstances surrounding BNSFC's involvement in and knowledge of practices at the DPC Site, as well as to whether an imminent and substantial threat to the environment currently exists. Nevertheless, on a Motion to Dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint, and view them in the light most favorable to the Plaintiff. Presuming correct the Plaintiffs' allegations, this Court finds that Plaintiffs have indeed stated a prima facie claim under the RCRA for which relief can be granted. BNSFC's responses to these allegations require Summary Judgment evidence and as such, do not support a Rule 12(b)(6) dismissal. Consequently, BNSFC's Motion to Dismiss Plaintiffs' RCRA claims is **DENIED**. Again, however-er, the Court invites appropriate dispositive motions upon completion of discovery.

### E. *Marathon Ashland and Marathon Oil's Claims for Declaratory Relief*

Finally, BNSFC argues that all of Plaintiffs claims for Declaratory Relief are predicated upon untenable legal theories and as such, require dismissal. However, as set forth above, this Court has determined that Plaintiffs' claims, with the exception of those brought pursuant to CERCLA § 107(a), are presently viable. Therefore, BNSFC's Motion to Dismiss Plaintiffs' Claims for a Declaratory Judgment is **DENIED,** allowing for later disposition by summary judgment, if appropriate after proper discovery.

### III. *Conclusion*

For the reasons set forth above, Defendant BNSFC's Motion to Dismiss Marathon Ashland's claims under CERCLA § 107(a) is **GRANTED,** and such claims are **DISMISSED WITHOUT PREJU-DICE.** BNSFC's Motion to Dismiss is

**DENIED** with respect to all other claims. The parties are **ORDERED** to proceed with discovery in the normal course of the litigation and to bear their own costs and attorney's fees incurred herein to date. In due course, the Court will enter a final judgment as to the claim disposed of by this order.

**IT IS SO ORDERED.**