**Victor GRESHAM and Conquest Communications Group, LLC, Plaintiffs,**

v.

**Michael PICKER, Mike Florio, Carla Peterman, Liane Randolph, and Catherine Sandoval, in their official Capacity as Commissioners of the California Public Utilities Commission, Defendants.**

**No. 2:16-cv-01848-JAM-CKD**

United States District Court, E.D. California.

Signed October 06, 2016

Filed October 07, 2016

Bradley A. Benbrook, Stephen M. Duvernay, Benbrook Law Group, Sacramento, CA, Jason Torchinsky, PHV, Holtzman Vogel Josefiak Torchinsky PLLC, Warrenton, VA, for Plaintiffs.

Arocles Aguilar, Christine Jun Hammond, Harvey Y. Morris, California Public Utilities Commission, San Francisco, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION

JOHN A. MENDEZ, UNITED STATES DISTRICT JUDGE

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction to prohibit Defendants from enforcing California's automatic dialing-announcing device prohibition against Plaintiffs on the grounds that the statute violates the First Amendment. For the following reasons, Plaintiffs' motion is denied.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff Victor Gresham is a political consultant who engages in political communications through Plaintiff Conquest Communications Group, LLC, a Virginia based company of which he is a principal. Declaration of Victor Gresham in Support of Plaintiffs' Motion for Preliminary Injunction ("Gresham Decl.") ¶ 2. Gresham and his company want to conduct politically related, automated telephone calls in California during the 2016 election cycle. Id. ¶ 3.

Plaintiffs have refrained from conducting politically related automated telephone calls in California, at least since late Spring 2016, due to California Public Utility Code §§ 2872, 2874(a), and 2876 ("ADAD Statute"). Gresham Decl. ¶ 3. Plaintiffs have declined to place automated telephone communications for clients and have lost potential business opportunities and revenue as a result. Id. ¶ 4. Without the ban, Plaintiffs would make calls such as automated surveys and messages relat-

ed to political campaigns, automated scripted calls on behalf of political clients, and telephone town hall calls that allow the answerer to join a live, town hall style forum conducted with a politician or officeholder. Id. ¶ 3.

Defendants admit that they, as Commissioners of the California Public Utilities Commission, have the authority to enforce California's ADAD Statute when there is no express or implied consent to the call. Ans. ¶ 3. Under the statute, they may enforce penalties against violators, including a fine not to exceed five hundred dollars for each violation and/or disconnection of telephone service to the automatic dialing-announcing device for a period of time specified by the commission. Cal. Pub. Util. Code § 2876.

Plaintiffs filed their complaint at the beginning of August 2016. ECF No. 1. The complaint contains two causes of action under 42 U.S.C. § 1983. The first cause of action alleges that Cal. Pub. Util. Code §§ 2872 and 2874 violate Plaintiffs' free speech rights guaranteed by the First and Fourteenth Amendments both on their face and as applied. Compl. ¶ 22. The second cause of action alleges that those sections impose impermissible prior restraints on constitutionally-protected speech and that they are unconstitutional for failing to contain adequate standards or guidelines to control the discretion of the decision-maker. Compl. ¶¶ 35, 36.

Plaintiffs filed their Motion for Preliminary Injunction and Request for Advance Hearing on the Motion on August 17, 2016. ECF Nos. 7, 9. Defendants timely filed their opposition and the Court denied Plaintiffs' request to advance the hearing. ECF Nos. 17, 18. The Court heard arguments on October 4, 2016, and took this motion under submission with an order to follow.

## II. OPINION

### A. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). To obtain a preliminary injunction, a plaintiff must demonstrate that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1020 (9th Cir. 2016) (quoting Winter, 555 U.S. at 20, 129 S.Ct. 365). The last two factors merge when the government is a party. Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014). In the Ninth Circuit, a preliminary injunction may be appropriate "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," as long as the other two Winter factors are also satisfied. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–35 (2011).

A preliminary injunction can be prohibitory or mandatory. See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserves the status quo pending a determination of the action on the merits.'" Id. (quoting Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988)). The "status quo" is "the last, uncontested status which preceded the pending controversy." Id. (quoting Regents of the Univ. of Cal. v. Am. Broad. Cos., 747 F.2d 511, 514 (9th Cir. 1984)). A mandatory injunction, on the other hand, "orders a responsible party to take ac-

tion." Id. (quoting Meghrig v. KFC W., Inc., 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996)) (internal quotation marks omitted). Mandatory injunctions are particularly disfavored and generally "are not granted unless extreme or various serious damage will result[;] they are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." Id. (quoting Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1980)).

■ Plaintiffs seek to change the status quo and thus seek a disfavored, mandatory injunction. As the Ninth Circuit explained in Doe v. Harris, this standard can be difficult to apply in the First Amendment context:

> [A]pplication of this standard in First Amendment cases involves an inherent tension: the moving party bears the burden of showing likely success on the merits—a high burden if the injunction changes the status quo before trial—and yet within that merits determination the government bears the burden of justifying its speech-restrictive law. Accordingly, in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.

772 F.3d 563, 570 (9th Cir. 2014) (quoting Thalheimer v. City of San Diego, 645 F.3d 1109, 1115–16 (9th Cir. 2011)) (internal quotation marks and citations omitted).

### B. Analysis

#### 1. Likelihood Of Success On The Merits

■ The merits of Plaintiffs' case depend on whether the Ninth Circuit's decision upholding the constitutionality of the ADAD Statute, Bland v. Fessler, 88 F.3d 729 (1996), was overruled by the Supreme Court's more recent decisions regarding First Amendment analysis in Reed v. Town of Gilbert, Ariz., —— U.S. ——, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015), and Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).[1] The Bland holding binds this Court unless that decision is clearly irreconcilable with intervening Supreme Court precedent. See Biggs v. Sec'y of Cal. Dep't of Corr. & Rehab., 717 F.3d 678, 689 (9th Cir. 2013). If the Reed or Citizens United decision effectively overruled Bland, this Court will need to reevaluate the statute in light of the more recent precedent.

#### a. Statute At Issue

Any person operating an automatic dialing announcing device in California is subject to the ADAD Statute. Cal. Pub. Util. Code § 2872 (b).[2] An "automatic dialing-announcing device" is "any automatic equipment which incorporates a storage capability of telephone numbers to be called or a random or sequential number generator capable of producing numbers to be called and the capability, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called." § 2871.

The ADAD Statute's general provision proscribes use of ADADs to place calls over telephone lines unless "pursuant to a

---

**1.** At the hearing, Plaintiffs raised the possibility that portions of the statute may be unconstitutionally vague. Plaintiffs did not make a void for vagueness argument in either their Motion or Reply and thus the Court will not address it at the preliminary injunction stage.

**2.** All further section citations are to the California Public Utility Code unless otherwise noted.

prior agreement between the persons involved, whereby the person called has agreed that he or she consents to receive such calls from the person calling, or as specified in Section 2874." § 2873. Section 2874 requires ADAD calls to be preceded by unrecorded, natural voice that provides certain information and requests consent from the caller to play the prerecorded message. § 2874. The ADAD must disconnect from the line upon termination of the call. Id.

Section 2872 lists a number of exemptions to the article's prohibitions, which are the subject of Plaintiffs' complaint.

(d) This article does not prohibit the use of an automatic dialing-announcing device by any person exclusively on behalf of any of the following:

(1) A school for purposes of contacting parents or guardians of pupils regarding attendance.

(2) An exempt organization under the Bank and Corporation Tax Law (Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code) for purposes of contacting its members.

(3) A privately owned or publicly owned cable television system for purposes of contacting customers or subscribers regarding the previously arranged installation of facilities on the premises of the customer or subscriber.

(4) A privately owned or publicly owned public utility for purposes of contacting customers or subscribers regarding the previously arranged installation of facilities on the premises of the customer or subscriber or for purposes of contacting employees for emergency actions or repairs required for public safety or to restore services.

(5) A petroleum refinery, chemical processing plant, or nuclear power-plant for purposes of advising residents, public service agencies, and the news media in its vicinity of an actual or potential life-threatening emergency.

(e) This article does not prohibit law enforcement agencies, fire protection agencies, public health agencies, public environmental health agencies, city or county emergency services planning agencies, or any private for-profit agency operating under contract with, and at the direction of, one or more of these agencies, from placing calls through automatic dialing-announcing devices, if those devices are used for any of the following purposes:

(1) Providing public service information relating to public safety.

(2) Providing information concerning police or fire emergencies.

(3) Providing warnings of impending or threatened emergencies.

These calls shall not be subject to Section 2874.

(f) This article does not apply to any automatic dialing-announcing device that is not used to randomly or sequentially dial telephone numbers but that is used solely to transmit a message to an established business associate, customer, or other person having an established relationship with the person using the automatic dialing-announcing device to transmit the message, or to any call generated at the request of the recipient.

### b. Standard Of Review For Speech Regulation

■ The ADAD Statute's constitutionality depends on whether the statute is content-based or content neutral.

■ Under the First Amendment, "the government has no power to restrict expression because of its message, its

ideas, its subject matter, or its content." Police Dep't of City of Chi. v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 135 S.Ct. at 2226. When a distinction is drawn based on the message a speaker conveys, the distinction is subject to strict scrutiny. Id. at 2227. Content-based regulations that burden speech are treated the same way as content-based bans on speech and are thus subject to strict scrutiny as well. Sorrell v. IMS Health Inc., 564 U.S. 552, 555–56, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) (quoting United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 812, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000)). Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed, 135 S.Ct. at 2231. "[I]t is the rare case in which a speech restriction withstands strict scrutiny." Reed, 135 S.Ct. at 2236 (Kagan, J., concurring in the judgment) (citing Williams–Yulee v. Fla. Bar, —— U.S. ——, 135 S.Ct. 1656, 1666, 191 L.Ed.2d 570 (2015)).

■■■■■ In contrast, a reasonable time, place or manner restriction on speech may be valid under the First Amendment. Clark v. Cmty for Creative Non–Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Such regulations will be upheld "provided they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Id.; Moser v. FCC, 46 F.3d 970, 973 (1995).

The Ninth Circuit has held that the ADAD Statute is a content neutral, reasonable time, place, and manner regulation. Bland, 88 F.3d at 732–36, 739. That holding binds this Court unless intervening precedent dictates otherwise.

#### c. The Law-of-the-Circuit Rule

■■■■■ Under this circuit's law-of-the-circuit rule, courts are bound by a prior circuit decision unless that decision is "clearly irreconcilable with intervening Supreme Court precedent." Biggs v. Sec'y of Cal. Dep't of Corr. & Rehab., 717 F.3d 678, 689 (9th Cir. 2013) (citing Miller v. Gammie, 335 F.3d 889, 899–900 (9th Cir. 2003)). "Circuit precedent . . . can be effectively overruled by subsequent Supreme Court decisions that are 'closely on point' even though those decisions do not expressly overrule the prior circuit precedent." Miller, 335· F.3d at 899 (citing Galbraith v. Cnty of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)). The issues need not be identical; "[r]ather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." Id. at 900. In such circumstances, the three-judge panel or district court "should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled," at least "to the extent [the prior opinion] is inconsistent with the [later authority.]" Id. at 893.

■■■■ "This is a high standard." Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir. 2012).

> Although [the court] should consider the intervening authority's reasoning and analysis, as long as [it] can apply our prior circuit precedent without running afoul of the intervening authority, [it] must do so. It is not enough for there to be some tension between the intervening

higher authority and prior circuit precedent or for the intervening higher authority to cast doubt on the prior circuit precedent.

Id. at 1207 (internal citations and quotation marks omitted). Thus, this Court must follow Bland unless Bland is clearly irreconcilable with intervening Supreme Court precedent.

### d. Ninth Circuit Precedent: Bland v. Fessler

In Bland, the Ninth Circuit subjected the California ADAD Statute to intermediate scrutiny and held that it does not violate the First Amendment. First, the court analyzed whether the statute is content-based or content neutral. It divided the statute into its central prohibitory provision (§ 2873) and its exemptions (§ 2872(d)–(f)). It concluded that the central provision prescribes a *method* of communication, not the content of communication. Bland, 88 F.3d at 733 (emphasis in original).

Next, the court concluded that the exemptions in the statute are also content neutral. It found that the global exemption for parties with an existing relationship, § 2872 (f), and the exemption for nonprofit organizations calling their members, § 2872(d)(2), rest "not on the content of the message, but on existing relationships implying consent to the receipt of ADAD calls." Id. (noting the Eighth Circuit's similar analysis of Minnesota's ADAD statute in Van Bergen v. Minn., 59 F.3d 1541 (8th Cir. 1995)). The court reached the same conclusion for the other exemptions, but noted that the others "do relate to content, some involving existing relationships, others not." Bland, 88 F.3d at 733–34. The Bland court stated:

> Although regulating content, all of these exemptions are based on relationships implying consent to receive ADAD calls, or messages the recipient wants to hear, or both: parents want to know of their children's attendance, consumers of cable and utility services want installation information, and everyone wants information concerning public safety and emergencies.

Id., at 734. The court rejected the plaintiffs' argument that the exemptions privilege some relationships over others, noting that the statute exempts communications between *all* persons and entities with *established relationships.* Id. (emphasis added).

Finally, the court rejected plaintiffs' argument that "the group-based exemptions improperly contain content-based restrictions," as there was no indication that the government adopted the regulation because of disagreement with the message conveyed. Id. (Citing Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)) It observed:

> Not a scintilla of evidence suggests that the State of California disapproves of parent-teacher communication regarding student grades, as opposed to the communication about student attendance that the statute permits. Nor do the restrictions on the content of the messages the other exempted groups may convey—cable companies may call only regarding previously arranged service installation, and dangerous facilities may call only regarding disasters—carry the scent of government favoritism in the free market of ideas.

Id. The court determined that the exemptions, and thus the statute, were content neutral and went on to apply intermediate scrutiny.

### e. Intervening Precedent: Reed v. Town of Gilbert, Ariz.

In 2015, the Supreme Court held that a sign ordinance exempting and regulating signs of certain categories—imposing dif-

ferent restrictions on temporary directional signs as compared to political and ideological signs—was a content-based regulation of speech that could not survive strict scrutiny. Reed v. Town of Gilbert, Ariz., —— U.S. ——, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015). In doing so, the Court reversed the Ninth Circuit's holding that the town's Sign Code was content neutral. Id. at 2226. The Court primarily took issue with the Ninth Circuits' reasoning that the Sign Code was content neutral because the town "did not adopt its regulation of speech based on disagreement with the message conveyed and its justifications for regulating temporary directional signs were unrelated to the content of the sign." Id. at 2227 (paraphrasing the appellate court). Justice Thomas wrote:

> But this analysis skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face. A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech....Although a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based, it is not necessary. In other words, an innocuous justification cannot transform a facially content-based law into one that is content neutral.
>
> That is why we have repeatedly considered whether a law is content neutral on its face before turning to the law's justification or purpose.

Id. at 2228. Correcting the Ninth Circuit's reliance on Ward, Justice Thomas explained that "Ward's framework applies only if a statute is content neutral." Id. at 2229.

The Court next rejected the Ninth Circuit's reasoning that "the Sign Code was content neutral because it does not mention any idea or viewpoint, let alone single one out for differential treatment." Justice Thomas clarified that "[t]he First Amendment's hostility to content-based regulation extends...to prohibition of public discussion of an entire topic." Id. at 2230. "A speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." Id.

Finally, the Reed Court rejected the Ninth Circuit's characterization of the Sign Code's distinctions as content neutral because they are speaker and event-based. According to the Court, the distinctions were not speaker-based, and even if they were, that would not necessarily make the distinctions content neutral: laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference. Id. at 2230 (citing Citizens United, 558 U.S. at 340, 130 S.Ct. 876, and Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 658, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)).

Concluding that the Sign Code imposed content-based restrictions on speech, the Court subjected the code to strict scrutiny and found that the town could not show that the ordinance was narrowly tailored to further a compelling government interest. Id. at 2232. In closing, Justice Thomas opined that "a sign ordinance narrowly tailored to the challenges of protecting the safety of pedestrians, drivers, and passengers—such as warning signs marking hazards on private property, signs directing traffic, or street numbers associated with private houses—well might survive strict scrutiny." Id. at 2233.

### f. Bland Is Not Clearly Irreconcilable With Reed

■ As Plaintiffs argue, and the Ninth Circuit has recognized, Reed "provided authoritative direction for differentiating between content neutral and content-based enactments. United States v. Swisher, 811 F.3d 299, 313 (9th Cir. 2016). Reed's holding, however, is not so clearly irreconcilable with Bland to excuse this Court from following Bland's binding authority.

Reed's prescription that courts apply strict scrutiny to facially content-based statutes regardless of governmental motive is in tension with some of the Ninth Circuit's language in Bland. The Bland court noted that certain exemptions to the ADAD Statute are "related to content" and cited "Ward's framework" to reject the plaintiffs' argument "that the group-based exemptions improperly contain content-based restrictions." Bland, 88 F.3d at 734. A few of the exemptions do relate to content: schools may call parents and guardians regarding student attendance; certain companies may call customers about previously arranged services; certain agencies may contact the public regarding public safety and emergencies.

■ But, "some tension" is not enough to make the decisions clearly irreconcilable. See Lair, 697 F.3d at 1207. The Bland court found that all of the ADAD Statute exemptions were based "on existing relationships implying consent to the receipt of ADAD calls" or messages—like public safety and emergency information— the recipient wants to hear. Bland, 88 F.3d at 733–34. In fact, each and every exemption involves an existing relationship except for the exemptions for emergencies and public safety, which Plaintiffs say they

do not contest the government's interest in making. Although the exemption for schools regarding attendance and certain entities regarding prearranged services relate to content, these callers have an established relationship with the call recipients that would otherwise exempt direct calls to those recipients under § 2872(f). Subsection (d) merely extends that relationship-based exemption to intermediaries working solely on behalf of those callers to convey information the recipient already expects to receive. § 2872(d)(1),(3), & (4). This Court would be reading too far beyond the holding in Reed to find that the decision reaches relationship-based, consent-based, or emergency-based distinctions.

In addition to the analytical distinctions between Reed and Bland, the factual distinctions caution against finding circuit precedent overruled.[3] The Sign Code in Reed exempted certain signs from a general prohibition and imposed different restrictions on "Ideological Signs," "Political Signs," and "Temporary Directional Signs Relating to a Qualifying Event." Reed, 135 S.Ct. at 2224–25. In contrast, the ADAD Statute requires consent for all ADAD calls and makes exemptions to the express consent requirement only for those with existing relationships that imply consent and for emergencies. The statute does not single out political subject matter or other subject matter for differential treatment. A call from a nonprofit to a member or from a business to an established customer may contain a political message, a commercial message, or a message on another subject matter, and that message will not determine whether the caller violated the statute; the relationship between the par-

---

**3.** Defendants further distinguish the cases on the fact that the Sign Code regulated outdoor signs while the ADAD Statute regulates intrusions into the private home. Although courts have recognized that residential privacy is an important or significant government interests, Defendants do not point the Court to any case where a private channel of communication triggered a lower standard of scrutiny.

ties will. In support of their position, Plaintiffs direct the Court to a post-Reed, Fourth Circuit decision striking down a South Carolina ADAD Statute for its content-based restrictions; however, that statute, like the Sign Code in Reed, singled out "calls with a consumer or political message but [did] not reach calls made for any other purpose." Cahaly v. Larosa, 796 F.3d 399, 405 (4th Cir. 2015). More significant to this Court are two post-Reed district court decisions that each upheld a state ADAD statute that also exempts certain ADAD calls placed to recipients with a preexisting relationship with the caller. See Gresham v. Swanson, No. 16–1420, 2016 WL 4027767 (D. Minn. July 27, 2016); Patriotic Veterans, Inc. v. Ind., No. 10-723, 2016 WL 1382137, 177 F.Supp.3d 1120 (S.D. Ind. Apr. 7, 2016). Neither of those courts read Reed to require strict scrutiny for relationship-based distinctions.

Furthermore, Plaintiffs' principal issue with the ADAD Statute is that it exempts nonprofits for calls to their members but does not exempt Plaintiffs' activity. See § 2872(d)(2). But the Bland court, without considering governmental motives, easily determined that the exemption for nonprofits was content neutral and that the exemption "rests on existing relationships implying consent." Bland, 88 F.3d at 733. The critical point is that nonprofits are only exempt from the prohibition when making calls to their members; the Legislature did not write them a blank check. Of the exemptions that may be in tension with Reed, this is not one of them.

For all of these reasons, this Court finds that the Ninth Circuit's holding in Bland is not clearly irreconcilable with Reed and that decision cannot justify departure from this circuit's precedent.

### g. Bland Is Not Clearly Irreconcilable With Citizens United

Plaintiffs also argue that the ADAD statute discriminates on the basis of the speaker's identity in violation of the First Amendment. Rep. at 3; Mot. at 10. At the hearing, Plaintiffs argued that the exemptions are speaker-based distinctions that are impermissible under Reed and Citizens United.

However, neither decision meets the law-of-the-circuit rule's high threshold to overcome Bland. The Reed court determined that the Sign Code at issue was not speaker-based, and the dicta accompanying that conclusion do not provide this Court with a clear rule for determining when a speaker-based statute would trigger strict scrutiny. Reed, 135 S.Ct. at 2230–31. The Reed court merely points out that a speaker-based distinction is not necessarily content neutral; rather, the distinction "begin[s] [ ] the inquiry." Reed, 135 S.Ct. at 2230–31.

Citizens United speaks more to Plaintiffs' point, but is not irreconcilable with Bland. In the majority opinion, the Supreme Court stated that "speech restrictions based on the identity of the speaker are too often simply a means to control content. . . . [T]he Government may commit a constitutional wrong when by law it identifies certain preferred speakers." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). The law at issue in Citizens United was both content-based—specifically applying to electioneering and speech advocating for or against political candidates—and speaker-based—singling out corporations and unions. Id. at 310, 130 S.Ct. 876. The Court held that the government cannot suppress political speech on the basis of the speaker's corporate identity. Id. at 365, 130 S.Ct. 876.

The Citizens United decision does not say, or even strongly imply, that a distinction based on relationship or consent is subject to strict scrutiny. Certainly, relationship-based statutes will requires some·

inquiry into a speaker's identity, but only in order to determine the existence of a relationship between the speaker and the listener. The statute does not make blanket exemptions for certain speakers. For instance, a nonprofit would be exempted under § 2872(d)(2) when calling members, but not if it canvassed all phone numbers in a certain geographic region.

Furthermore, even if the statute were speaker-based, the Ninth Circuit has not interpreted Citizens United to hold that speaker-based laws automatically trigger strict scrutiny. Doe v. Harris, 772 F.3d 563, 575–76 (9th Cir. 2014) (analyzing a statute that singles out registered sex offenders under intermediate scrutiny after distinguishing the case from Citizens United). Bland is not clearly irreconcilable with Citizens United and thus Bland remains binding on this Court.

Under controlling Ninth Circuit precedent, the California ADAD Statute does not violate the First Amendment and Plaintiffs are thus not likely to succeed on the merits of their claim.

2. The Remaining Factors

As described above, courts consider the four factors outlined in Winter to determine whether a preliminary injunction should issue. However, in the First Amendment context, the irreparable harm, balance of the equities, and public interest analysis are heavily informed by the merits determination. Bland binds this Court and Plaintiffs are unlikely to succeed on the merits. The Court thus finds against Plaintiffs on the remaining factors as well.

III. ORDER

Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.