UNITED STATES of America, Plaintiff,

v.

Richard MIDDLETON, Circle Environmental, Inc., BSJR, LLS, and Waterpollutionsolutions.com, Inc., Defendant.

CASE NO.: 1:11–CV–127(WLS)

United States District Court, M.D. Georgia, Albany Division.

Signed 03/22/2017

Amy R. Gillespie, Angela Mo, Rachael Kamons, US Department of Justice, Washington, DC, Davis H. Forsythe, US Dept. of Justice, Denver, CO, Stewart R. Brown, US Attorney's Office, Macon, GA, for Plaintiff.

Wilbur T. Gamble, III, Dawson, GA, for Defendant.

## ORDER

W. LOUIS SANDS, SR., JUDGE

Presently pending before the Court is the Government's Motion for Summary Judgment on Costs against Defendant BSJR, LLC. (Doc. 91.) For the following reasons, the Government's Motion for Summary Judgment on Costs is **GRANTED.**

### PROCEDURAL BACKGROUND

On September 16, 2011, the Government initiated the above-captioned case by filing a complaint against Defendants Circle Environmental, Inc. ("Circle Environmental"), Waterpollutionsolutions.com, John Middleton, owner and operator of both Circle Environmental and Waterpollutionsolutions.com (collectively "CEISC"), and BSJR, LLC. (Doc. 1.) On January 31, 2014, CEISC filed a Motion for Summary Judgment against the Government. (Doc. 49.) On September 30, 2014, this Court denied Defendants' Motion for Summary Judgment.[1] (Doc. 65.) On December 8, 2014, the Government filed a Motion for Summary

---

1. On March 23, 3015, the Court received notice from the Government that a tentative consent decree was entered into with CEISC that would resolve all of the Government's claims against those Defendants. (Doc. 81.)

Judgment against Defendant BSJR. (Doc. 78.) On September 8, 2015, this Court granted the Government's Motion for Summary Judgment, finding Defendant BSJR liable for the Government's response to hazardous substances found at Site 2, and ordering the Parties to engage in discovery on the issue of damages. (Doc. 86 at 9–10.) The Government filed the instant Motion for Summary Judgment on Costs on January 31, 2017. (Doc. 91.) Defendant BSJR did not file a response. (*See* Docket.) The Court now finds the Government's instant motion ripe for review.

## SUMMARY JUDGMENT STANDARD

### I. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where it contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the

record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal

On May 19, 2015, after the close of the public comment period, the Court entered an Order adopting the Parties' proposed Consent Decree. (Doc. 85.) The Consent Decree did not address any of the Government's claims against BSJR.

knowledge of the affiant or declarant. *See* Fed. R. Civ P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in the nonmovant's favor. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II. Local Rule 56

Local Rule 56 requires the following:

The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. The Government complied with the Federal Rules of Civil Procedure, the Local Rules, and the order of this Court by timely filing a motion for summary judgment and a Statement of Material Facts. Defendant BSJR did not file a response. The Court will now address the Government's motion on the merits.

## FACTUAL BACKGROUND

The following facts are derived from the Government's Statement of Material Facts. (Doc. 91–2.) On September 16, 2011, the Government filed the present suit seeking recovery of response costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), ("Superfund"). (Doc. 1.) On September 8, 2015, this Court held BSJR liable in connection with the property located at 2222 Albany Highway, in Terrell County, GA (hereafter "Site 2."). (Doc. 86 at 5.) The soil at Site 2 was contaminated with hazardous substances including benzo(b)fluoranthene, chromium, lead, mercury, bis(2–ethylhexyl)phthalate, and arsenic. (Doc. 91–2 at ¶ 2.) Drums located on the property at Site 2 also contained hazardous substances including acetone, benzene, ethylbenzene, xylenes, antimony, chromium, copper, lead, mercury, nickel, sodium and zinc. (*Id.*)

As a result of the contamination, the United States Environmental Protection Agency ("EPA"), conducted extensive response activities including: inspection of the site; staging, inventorying, photographing, sampling, and removing the drums and roll-off containers; air monitoring; soil and air sampling; analysis of drums, soil and air samples; review of data and determination whether further mitigation was necessary; and seeking reimbursement of the costs of the abovementioned removal activities, through enforcement actions, including this case. (Doc. 91–2 at ¶ 3.) Below is a description and summary of the costs [2] the EPA incurred in

---

**2.** The EPA prepared a summary of its response costs. All costs set forth in the EPA Cost Summary are supported by documentation maintained in the ordinary course of business by EPA, and collected in a cost documentation package maintained by EPA at its Region 4 Superfund Records Center in Atlanta, Georgia. (Doc. 91–2 at ¶ 6.) The Cost Documentation Package for Site 2 was reviewed and certified by an Accountant in the Business Operations and Finance Management Branch at EPA Region 4. (Doc. 91–2 at ¶ 5.)

relation to removal activities of Site 2.[3]

EPA incurred "direct costs," i.e. site specific costs, in the form of both intramural and extramural. (Doc. 91–2 at ¶¶ 7–8.) Intramural costs relating to payroll and travel expenses for EPA employees totaled an amount of $84,686.20. (Doc. 91–2 at ¶ 7.) EPA also incurred costs relating to contractual obligations or extramural costs in the amount of $80,068.84. (Doc. 91–2 at ¶ 8.) EPA incurred "indirect costs," which are attributable to the Superfund program. (Doc. 91–2 at ¶ 9.) These costs are necessary for the administration and operation of the Superfund program and support site-specific cleanup efforts, but they are not directly accounted for on a site-specific basis. (Doc. 91–2 at ¶ 9.) Indirect costs can include rent, utilities, support staff salaries, and employee benefits. (Doc. 91–2 at ¶ 9.) The EPA incurred $86,732.64 in indirect costs. (Doc. 91–2 at ¶ 10.) The EPA asserts that its cost calculation methodology was developed in accordance with the Executive Office of the President, Office of Management and Budget's Statement of Federal Financial Accounting Standard # 4, Managerial Cost Accounting Concepts and Standards for the Federal Government. (Doc. 91–2 at ¶ 11.) EPA incurred a total of $251,487.68 in response costs in connection with the release or threatened release of hazardous substances at Site 2. (Doc. 91–2 at ¶ 16.)

The Government settled with thirty-four (34) other potentially responsible parties (hereafter "Generator Group") through an administrative settlement agreement resolving their liabilities for Site #1 and Site #2. (Doc. 91–2 at ¶ 12.) On April 2, 2013, EPA received a payment of $487,800 from the Generator Group. Of this payment, $110,380.04 was credited to Site 2. (Doc. 91–2 at ¶ 13.) The payment from the Generator Group was divided pro rata between Site 1 and Site 2 based upon EPA costs that had been incurred for each Site as of the time of payment. (Doc. 91–2 at ¶ 13.) On June 8, 2015, EPA received a payment of $285,000.00 from CEISC. (Doc. 91–2 at ¶ 14.) Of this payment, $71,250.00 was credited to Site 2. This payment was also divided pro rata between Site 1 and Site 2. (Doc. 91–2 at ¶ 14.) In total, EPA credited $181,630.04 to Site 2 from the abovementioned settlements. (Doc. 91–2 at ¶ 15.)

After subtracting the pro rata share of the monies received from the settlement payments by the Generator Group and CEISC, EPA's total unreimbursed response costs for Site 2 are $69,857.64. (Doc. 91–2 at ¶ 17.)

## ANALYSIS

Upon review, the Court finds that there is no genuine issue of material fact as to whether the Government has incurred recoverable costs associated with the cleanup of hazardous waste or threatened release of hazardous waste at Site 2. The Government has presented a *prima facie* case and the Defendant BSJR has failed to provide any argument or evidence to contradict the Government's alleged damages.

██ "As its name implies, CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp., v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). "The two main purposes of CERCLA are prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party." *Solutia, Inc., v.*

---

**3.** The EPA engaged in removal activities for two properties (Site 1 and Site 2) relating to CEISC. EPA's financial system has separate Site-specific Site/Spill identification codes for Site 1 and Site 2. (Doc. 91–2 at ¶ 4.)

*McWane, Inc.*, 726 F.Supp.2d 1316, 1330 (N.D. Ala. 2010)(citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996)). "CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99–499, § 101 *et seq.*, 100 Stat. 1613, provides two types of legal actions by which parties can recoup some or all of their costs associated with hazardous waste cleanup: cost recovery actions under § 107, and contribution actions under § 113." *United States v. Colorado & E.R.R.*, 50 F.3d 1530, 1535 (10th Cir. 1995).

■ "Regardless of whether the government performs the cleanup itself or compels 'potentially responsible parties ["PRPs"]' to do it, the government is authorized to recover 'all costs of removal or remedial action' associated with the cleanup from such PRPs, either through a civil action under § 107(a)(4)(A), or through an administrative settlement under § 122(g) or § 122(h). 42 U.S.C. §§ 9607(a)(4)(A), 9622(g) & (h)." *Id.* at 1331. "Under CERCLA's strict liability regime, a party that falls within any of the four PRP categories of § 107(a) may be held jointly and severally liable by the government for the entire cost of a cleanup, even if the party is 'innocent' in the sense that it did not contribute to the pollution at the site." *Id.*; *Redwing Carriers, Inc. v. Saraland Apts.*, 94 F.3d 1489, 1513 n.7 (11th Cir. 1996)(cit-

ing *Colorado & E.R.R. Co.*, 50 F.3d at 1535).

In considering the Government's Motion for Summary Judgment on Costs, the Court is required to undertake a three-part inquiry. *United States v. Amtreco, Inc.*, 846 F.Supp. 1578, 1581 (M.D. Ga. 1994). First the court must decide whether Site 2 action was a 'removal' or a 'remediation.' *Id.* Second, the court must determine what costs are attributable to the cleanup of Site 2. *Id.* Finally, the court must determine whether any of the costs incurred by the United States are inconsistent with the National Contingency Plan ("NCP"). *Id.* NCP is a body of regulations governing the cleanup of hazardous waste sites under CERCLA. *See* 42 U.S.C. § 9605(a); 40 C.F.R. Part 300 (1995).

The Court notes that it has already determined that the EPA's efforts at Site 2 amounted to "removal"[4] rather than remediation.[5] (Doc. 68 at 5.) In the Court's previous order, the Court wrote:

> CERCLA has two different statutes of limitations, one for remedial actions and another for removal actions. Removal actions are short-term, temporary responses to a release or threatened release of hazardous waste. Remedial actions are 'long-term, more thoroughly researched and planned permanent' remedies to the release or threatened release of hazardous substances. EPA's efforts at both Site 1 and Site 2, at-

4. Remove or removal means the cleanup of removal or released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. 42 U.S.C. § 9601(23).

5. Remedy or remedial action means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. 42 U.S.C. § 9601(24).

tempting to quickly resolve release and threatened release of hazardous waste, are removal actions.

(Doc. 68 at 5.)

■ PRPs responsible for response costs under CERCLA "shall be liable for . . . all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). "All costs of removal" means *any* cost incurred as a result of actions undertaken pursuant to § 9601(23) are included within the calculation of attributable removal costs." *Amtreco*, 846 F.Supp. at 1582 (emphasis added); *see also United States v. Hardage*, 982 F.2d 1436, 1443 (10th Cir. 1992)("However, CERCLA § 107(a)(4)(A) does not limit the government's recovery to all reasonsable costs; rather, it permits the government to recover all costs of removal or remedial action incurred . . . not inconsistent with the [NCP].")(internal quotations omitted). "Therefore, all costs incurred as a result of actions undertaken pursuant to § 9601(23) are included within the calculation of attributable removal costs." *Amtreco*, 846 F.Supp. at 1582. "Costs of removal also include prejudgment interest on those costs outlined above." 42 U.S.C. § 9607(4). "Costs of removal consist of: (1) investigative costs; (2) costs for designing and implementing a removal action; (3) enforcement, administration and litigations costs; and prejudgment interest." *Amtreco*, 846 F.Supp. at 1583.

■ The Court finds that in the United States brief together with the attached exhibits, the Government sets forth sufficient evidence to establish recoverable costs attributable to the cleanup of Site 2 and the category of recoverable costs for which each expenditure falls. Defendant BSJR failed to contest any of the Government's expenditures or calculations.[6] The Government incurred $84,686.20 in direct, intramural costs, $80,068.84 in direct, extramural costs, and $86,732.64 in indirect costs. Accordingly, the Court finds the Government incurred costs in the total amount of $251,487.68 in the cleanup of Site 2, of which $69,857.64 remains unreimbursed.

■ "In an action brought by the United States to recover response costs, the defendant bears the burden of proving that the response costs are inconsistent with the NCP." *Amtreco*, 846 F.Supp. at 1583 (citing *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 747 (8th Cir. 1986) ); *United States v. Hardage*, 733 F.Supp. 1424, 1433 (W.D. Okl. 1989). As the Court stated earlier, Defendant BSJR failed to respond to the Government's Motion and therefore has failed to meet its burden in establishing the EPA's expenditures were inconsistent with the NCP. Furthermore, "any response action carried out in compliance with the terms of an order issued by the EPA pursuant to § 106 of CERCLA, or a consent decree entered into pursuant to § 122 of CERCLA, will be considered 'consistent

---

**6.** The Court notes that it is not the burden of the Court to sift through discovery and the record in an attempt to find facts that might support one side or the other. *See* M.D. Ga. L.R. 56; *Ely v. Mobile Hous. Bd.*, 13 F.Supp.3d 1216, 1234 n.1 (S.D. Ala. 2014). Further, "[Rule 56] would mean nothing if district courts were required to mine the record, prospecting for facts that [one party] overlooked and could have, but did not, bring to the surface," thereby making district courts dig through [the record] which would shift the burden of sifting from the party to the courts. *Chavez v. Secy. Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997)("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact.").

with the NCP.'" 40 C.F.R § 300.700(c)(3)(ii) (2000); *Amtreco*, 846 F.Supp. at 1583; *Canadyne–Georgia Corp. v. Bank of Am., N.A.*, 174 F.Supp.2d 1337, 1379 (M.D. Ga. 2001)(citing *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc.*, 100 F.3d 792, 796–97 (10th Cir. 1996)). Here, based on the EPA's observation of the condition of Site 2, the EPA initiated an Emergency Removal Action. Based on the evidence, and on the presumption of consistency, as well as the lack of any contrary evidence presented by Defendant BSJR, the Court finds that the Government has satisfied the requirement that the hazardous release caused it to incur response costs as alleged and consistent with the NCP. The Court further finds, no genuine dispute of material fact remains as to the Government's damages as alleged.

## CONCLUSION

Accordingly, for the aforementioned reasons, the Government's Motion for Summary Judgment on Costs (Doc. 91) is **GRANTED**. The Court hereby **ORDERS** Defendant BSJR, LLC, to pay $69,857.64 to the Government. The Clerk is **DIRECTED** to enter final judgment in this case in favor of the Government.

**SO ORDERED**, this 22nd day of March, 2017.