# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2018

No. 18-3138

SUSANNA MIRKIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED AND BORIS MIRKIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

v.

XOOM ENERGY, LLC AND XOOM ENERGY NEW YORK, LLC,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of New York
No. 18-cv-2949, Allyne R. Ross, District Judge, Presiding.
(Argued June 11, 2019; Decided July 26, 2019)

Before: NEWMAN, POOLER, and PARKER, *Circuit Judges*.

Plaintiffs brought a purported class action against defendants alleging that they had breached a customer agreement by failing to set their electricity rates according to their actual or estimated supply costs. The complaint included calculations showing that defendants' rates substantially exceeded the market supply cost of wholesale energy. The United States District Court for the Eastern District of New York (Ross, *J.*) dismissed the complaint under Rule 12(b)(6), reasoning that customers had no way of determining defendants' supply costs, as rate-setting was a purely internal company activity. By post-judgment motion pursuant to Rules 59(e) and 60(b), plaintiffs sought leave to amend. The District Court denied plaintiffs leave to amend their complaint, reasoning that it would be futile. We **AFFIRM** in part, **REVERSE** in part, and **REMAND**.

———

J. BURKETT MCINTURFF (Steven L. Wittels & Tiasha Palikovic, *on the brief*), Wittels Law, P.C., Armonk, NY, *for Plaintiffs-Appellants*.

DAVID R. KOTT (Christopher A. Rojao, *on the brief*), McCarter & English, LLP, Newark, NJ, *for Defendants-Appellees*.

———

BARRINGTON D. PARKER, *Circuit Judge*:

Susanna and Boris Mirkin (the "Mirkins") sued XOOM Energy, LLC and XOOM Energy New York, LLC (collectively, "XOOM") in New York state court for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[1] XOOM then removed the action to federal court. The United States District Court for the Eastern District of New York (Ross, *J.*) dismissed the Mirkins' complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6) and denied the Mirkins' post-judgment request, made pursuant to Rules 59(e) and 60(b), for leave to amend. Because we conclude that the Mirkins should have been allowed to amend their Complaint, and their Complaint and proposed amended complaint (the "PAC") stated plausible claims for breach of contract, we reverse the judgment of the District Court in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

The Complaint alleges a number of facts related to the New York energy market. Specifically, in 1996, the market was deregulated, and in the wake of the deregulation, third-party energy services companies ("ESCOs") began competing

---

[1] The dismissal of the implied covenant and unjust enrichment claims is not challenged on appeal. Accordingly, we affirm the District Court's dismissal of those claims.

with traditional utilities. These ESCOs operate as commodity brokers or middlemen. They do not generate or deliver electricity; they simply buy electricity from utility companies that generate it and resell it to consumers. Utility companies then ultimately deliver the electricity to consumers. The Mirkins allege that the business practices of ESCOs have come under intense scrutiny from regulators as a consequence of questionable business practices. According to the Complaint, in December 2016, following a flood of consumer complaints and negative media reports, the New York State Public Service Commission ("PSC") permanently prohibited ESCOs from serving low-income customers. Compl. ¶ 36.

The Complaint cites to the PSC's March 2018 conclusions that "ESCO customers have become the victims of a failed market structure that results in customers being fooled by advertising and marketing tricks into paying substantially more for commodity service than [if] they had remained full utility customers, yet thinking they are getting a better deal." *Id.* ¶ 37. The PSC explained that the primary problem with ESCOs is "the overcharging of customers for [a] commodity due to the lack of transparency . . . on ESCO prices and products," which "allows ESCOs to charge customers practically whatever

4

they want." *Id.* The PSC also concluded that "ESCOs take advantage of the mass market customers' lack of knowledge and understanding of, among other issues, the electric and gas commodity markets, commodity pricing, . . . contract terms . . . and in particular, the ESCOs' use of teaser rates and 'market based rate' mechanisms that customers are charged after the teaser rate expires." *Id.*

The parties do not dispute that XOOM, which supplies residential electricity to thousands of New York households, operates like a typical ESCO and markets itself as such. Oral Arg. R. at 13:59–14:10 (conceding that XOOM operates essentially as a commodity broker or middleman); *see also* PAC ¶¶ 48–49 (quoting *What is Energy Deregulation?*, XOOM Energy, https://xoomenergy.com/en/what-is-deregulation (last visited July 23, 2019) (explaining XOOM's middleman role and confirming that it does not generate or deliver electricity) [hereinafter "XOOM Website"]; *Frequently Asked Questions*, XOOM Energy, https://xoomenergy.com/en/faq (last visited July 23, 2019) ("A variable rate plan allows you to purchase gas at *market-based prices* that change from month to month." (emphasis added))). The Mirkins allege that, like other ESCOs, XOOM attracts customers with low introductory rates. Upon the expiration of these rates, customers are then charged variable rates.

In March 2013, the Mirkins entered into a customer agreement (the "Agreement") with XOOM.  The Agreement set forth the basis upon which rates would be determined as follows:

> Your rate for energy purchases will be a variable rate, per kWh, that may change on a monthly basis, plus taxes and fees, if applicable. Your monthly variable rate is based on XOOM's *actual and estimated supply costs* which may include but not be limited to prior period adjustments, inventory and balancing costs.

App'x at 29 (emphasis added).  The Mirkins remained customers of XOOM for six months before discontinuing the arrangement because of their dissatisfaction with the rates they were charged after the expiration of the teaser rate.

The Mirkins sued XOOM for breaching the Agreement, alleging that XOOM did not base its rates on its supply costs.  With the help of an energy expert, the Mirkins calculated the market cost for supplying wholesale energy (the "Market Supply Cost") based on publicly available data provided by the New York Independent System Operator ("NYISO"), accounting for ancillary services costs, capacity costs, renewable portfolio standard costs, and various charges related to the NYISO.  The Mirkins' calculations, set forth in their Complaint, are as follows:

| Period | XOOM Rate | Market Supply Cost | Difference in % |
|---|---|---|---|
| 5/10/2013 - 6/11/2013 | 9.39 (teaser) | 11.03 | -14.87% |
| 6/11/2013 - 7/11/2013 | 12.50 | 11.89 | 5.13% |
| 7/11/2013 - 8/9/2013 | 15.05 | 12.36 | 21.76% |
| 8/9/2013 - 9/10/2013 | 15.55 | 10.1 | 53.96% |
| 9/10/2013 - 10/8/2013 | 14.79 | 10.12 | 46.15% |
| 10/8/2013 - 11/7/2013 | 15.57 | 9.82 | 58.55% |

Compl. ¶ 47. The Mirkins allege that, according to their calculations, XOOM's rates substantially exceeded the Market Supply Cost and continued to rise even when the Market Supply Cost went down.

XOOM moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). The District Court granted the motion, reasoning that the Agreement's reference to actual or estimated supply costs "makes XOOM's rate-setting decisions an internal activity." *Mirkin v. XOOM Energy, LLC*, 342 F. Supp. 3d 320, 328 (E.D.N.Y. 2018). In other words, according to the District Court, the Agreement allows XOOM to set rates at its discretion because "[c]ustomers—at least those without any background in the electricity market or the numerous factors that may determine the costs of an individual electricity provider—would have no basis for predicting XOOM's actual or estimated costs." *Id.* This conclusion disregarded plausible allegations in the Complaint.

Additionally, the Mirkins submitted the PAC, adding a number of allegations aimed at remedying the District Court's concerns about the Complaint. The Mirkins sought leave to file the PAC, which was attached to a postjudgment motion pursuant to Rules 59(e) and 60(b). The District Court denied them leave to amend, reasoning, *inter alia*, that the amendment would be futile for the same reasons it had initially dismissed the Complaint. App'x at 113. We also disagree with this conclusion concerning the PAC .

## DISCUSSION

This Court "review[s] *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (alteration in original)).

The District Court dismissed the Complaint because it concluded that the Agreement did "not incorporate any references to external rates or market prices" and therefore "provides customers with no clear formula for the calculation of its costs." *XOOM*, 342 F. Supp. 3d at 328. Thus, according to the District Court, there is no way the Mirkins could successfully state a claim without detailed information on the internal costs and rate-setting processes to which only XOOM is privy.

In holding the Complaint insufficient and the motion to file the PAC futile, the District Court failed to accept as true plausible allegations in the Complaint and the PAC. As an initial matter, XOOM concedes that it operates as a commodity broker or middleman and does not generate or deliver electricity. Oral Arg. R. at 13:59–14:10. Rather, it purchases energy "from wholesale markets" and resells that energy to its customers. PAC ¶ 48 (quoting XOOM Website). Consistent with this concession, the Mirkins plausibly allege that "[t]he cost of wholesale energy is the primary component of the non-overhead costs XOOM incurs." Compl. ¶ 51. We must therefore draw the reasonable inference from the Complaint and the PAC that XOOM's actual or estimated supply costs should track the Market Supply Cost.

The Mirkins have alleged, with the support of the expert calculations included in the Complaint and the PAC, that XOOM's rates showed significant upward deviations from the Market Supply Cost and continued to rise even when that cost fell. These allegations are sufficient to state a claim for breach of contract, as XOOM promised to base its rates on its supply costs and the Mirkins' allegations and calculations plausibly allege that this did not occur. Notably, XOOM failed, in its briefs and at oral argument, to cast doubt on the plausibility of these allegations simply by pointing to a single factor that could cause such substantial deviations from the Market Supply Cost in just a few months.

The District Court also suggested that the Mirkins "fabricated" their calculations. *XOOM*, 342 F. Supp. 3d at 329. We see no support for this assertion in the Complaint or the PAC. On the contrary, in approximating the Market Supply Cost, the Mirkins relied on publicly available NYISO data, which is mandated by state and federal regulations and updated frequently to account for changes across time and location. PAC ¶ 53; Appellant's Br. at 30, 34. At the pleading stage, relying on this source of information is sufficient to set forth a plausible allegation of breach of contract.

For similar reasons, the District Court erred in denying the Mirkins leave to amend their Complaint. Notwithstanding the fact that the Complaint was sufficient to state a claim for breach of contract, the PAC should have allayed any concerns the District Court had about the plausibility of the Mirkins' allegations. First, the Mirkins specifically alleged in the PAC that "the wholesale cost of energy makes up over 90% of [XOOM's] supply costs." PAC ¶ 4. Second, the Mirkins alleged that "XOOM purchases its energy either directly from the [NYISO] or pursuant to an agreement[] that ties XOOM's supply costs to prices in the NYISO wholesale market." *Id.* ¶ 47. Indeed, the Mirkins alleged that XOOM was listed on NYISO's Annual Report as a "market participant" during the year in which it supplied the Mirkins with electricity. *Id.* Third, the Mirkins attached their expert's calculations and explained, in detail, the variables used to determine the Market Supply Cost. *Id.* ¶ 53; App'x at 103. Relatedly, they alleged that "all components of the wholesale cost of electricity are objectively determinable and mandated by regulation." PAC ¶ 53. Finally, the Mirkins presented a new data table demonstrating that XOOM's rates deviated from the rates charged by Con Edison,[2] the leading New York City electric utility

---

[2] Because utility companies like Con Edison participate on the wholesale energy market, their rates are another reflection of the Market Supply Cost. PAC ¶ 60.

company, by up to sixty percent, and continued to rise even when Con Edison's rates fell. *Id.* ¶ 61. We conclude that, like the Complaint, the PAC plausibly stated a claim for breach of contract.[3]

The Mirkins sought to present their PAC by moving to alter or amend the judgment under Rule 59(e) or alternatively to secure relief from the judgment under Rule 60(b). In *Williams v. Citigroup Inc.*, we reversed a district court's denial of Rule 59(e) and Rule 60(b) motions made by a plaintiff who, like the Mirkins, sought to amend its dismissed complaint. 659 F.3d 208, 214 (2d Cir. 2011). The District Court, we concluded, had "overemphasized considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules of Civil Procedure." *Id.* at 210. We noted that the Supreme Court's leading decision allowing amendment of a complaint, *Foman v. Davis*, 371 U.S. 178 (1962), also involved a post-judgment motion. *See Williams*, 659 F.3d at 214. Here, too,

---

[3] Our decision in *Richards v. Direct Energy Services, LLC*, 915 F.3d 88 (2d Cir. 2019), does not compel a different result. There, we were asked to determine the import of the following contractual provision in an agreement between an ESCO, Direct Energy Services, LLC, and a consumer: "After the Initial Term and during the Renewal Period, the rate for electricity will be variable each month at Direct Energy's discretion. The rate may be higher or lower each month based upon business and market conditions." *Id.* at 94. The consumer sued, principally alleging "that Direct Energy breached its contract . . . by not pegging its variable rate to Direct Energy's procurement costs." *Id.* at 92; *see also id.* at 100. Our Court concluded that the breach of contract theory could not stand.

While the consumer-plaintiff's breach of contract theory in *Richards* was identical, or at least nearly identical, to the one the Mirkins now advance, the relevant contractual provisions are critically different. The Agreement required XOOM to base its variable rates on its supply costs. In contrast, the contract in *Richards*, by its plain terms, imposed no such requirement; the relevant provision there made no mention of procurement costs. In light of this crucial difference, *Richards* does not control the outcome of this appeal.

we conclude that the District Court should have accepted the PAC, notwithstanding its presentation after judgment was entered. We therefore reverse the judgment to the extent that it denied the motions under Rules 59(e) and 60(b), direct that the plaintiffs may file their PAC, and affirm dismissal of their claims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment, which have not been pursued on appeal.

## CONCLUSION

For the reasons set forth, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** with direction to permit the Mirkins to proceed on their PAC.